UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRED GORDON, WILLIAM WIDMYER,
OSCAR STEFANUTTI, BROWN
ROAD GROUP, BFO INVESTMENT
COMPANY, and REFCO, INC.,

        Plaintiffs,

v.                                      Case No. 12-CV-13724
                                         HON. GEORGE CARAM STEEH
JOHN URBAHNS,

        Defendant.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

On August 22, 2012, plaintiffs filed this action asserting a number of claims. On October 29, 2012, plaintiffs filed a first amended complaint. In their first amended complaint, plaintiffs assert claims of breach of fiduciary duty (count I), contribution (count II), violation of MCL 450.4404 (count III), violation of MCL 450.4515 (count IV), accounting pursuant to MCL 450.4503 (count V), breach of contract (count VI), and piercing the corporate veil (count VII). On November 27, 2012, defendant filed a motion to dismiss or for summary judgment. The motion has been fully briefed. Oral argument occurred at a hearing on the motion on March 21, 2013. For the reasons that follow, the court GRANTS in part and DENIES in part defendant's motion.

BACKGROUND

All of the parties in this action have connections with a commercial real estate development project in Auburn Hills and Orion Township, Michigan. The project's

-1-

developer is Dutton Corporate Center, LLC ("DCC"). Plaintiff Brown Road Group ("BRG") is a 50% member of DCC. Plaintiff Gordon is BRG's manager. Plaintiff BFO is a 10% member of BRG. REFCO, Widmyer, and Stefanutti are equal members of BFO. Gordon is BFO's manager. Gordon is also the sole stockholder of REFCO.

The other 50% of DCC is owned by Dutton Investment, LLC. Dutton Investment is DCC's manager. Defendant Urbahns is the sole member and the manager of Dutton Investment.

Dutton Retail Center South, LLC ("DRCS") is a related entity to DCC. The parties in this case have generally the same connections with DRCS and they do with DCC.

Plaintiffs Gordon, Widmyer, Stefanutti, and Refco and defendant Urbahns guaranteed mortgage loans made by Huntington National Bank to finance development of the DCC project. DCC also intended to utilize the program of financial incentives for "Brownsfield Development" that the State of Michigan enacted to pay for the environmental measures needed for the DCC project.

In 2009, DCC defaulted on its payment obligations to Huntington and to various contractors. In June 2009, Huntington notified DCC, DRCS, and the guarantors that the loans were in default.

On August 18, 2009, Huntington filed a lawsuit in Oakland County Circuit Court against the plaintiff guarantors to collect on the guaranties of the loans used to fund the DCC project. Around December of 2010, I-75 Partners, LLC (formed and owned by Urbahns), purchased the loans' indebtedness from Huntington. On April 13, 2011, the state court granted summary judgment for liability in favor of Huntington and against the plaintiff guarantors. On April 28, 2011, I-75 Partners was substituted in place of Huntington

as the plaintiff. The court held a bench trial to determine damages. On March 6, 2012, the court awarded damages in the amount of $20,508,991.32 to I-75 Partners and against the plaintiff guarantors. That case is currently on appeal in the Michigan Court of Appeals.

When Huntington sued the plaintiff guarantors, it also filed a lawsuit in Indiana state court to enforce the guaranty signed by defendant Urbahns. That lawsuit was dismissed in conjunction with I-75 Partners acquiring the loans from Huntington.

Around the same time the state guaranty lawsuits were filed, contractors on the DCC project began to file construction liens to recover monies they claimed to be owed. Several contractors sued in Oakland County Circuit Court to foreclose their liens. Those cases are all pending in state court.

On May 21, 2012, DCC filed a lawsuit in Oakland County Circuit Court against two of the construction lien claimants on the DCC project. In that action, DCC alleges that its investigation of the project disclosed defective work and other failures by those contractors.

Defendant argues this case arises out of the same transactions, facts, and occurrences as the state court cases, particularly the guaranty lawsuit. In this case, plaintiffs allege the actions of Urbahns caused DCC to default on its obligations to make loan payments to Huntington and payments to the project's contractors. Plaintiffs also accuse Urbahns of breaching fiduciary and other duties in connection with I-75 Partners's acquisition and enforcement of the loans in the guaranty lawsuit. Plaintiffs also seek contribution from Urbahns for his share, as co-guarantor, of the guaranty lawsuit judgment.

In his motion to dismiss or for summary judgment, Urbahns argues: (1) this case should be dismissed because it is barred by res judicata; (2) this court should decline to exercise jurisdiction over this case under the doctrine of Colorado River abstention; and (3)

this court should dismiss this case for failure to state a claim.

STANDARD

Motion to Dismiss

In deciding a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in favor of the plaintiff, accept the factual allegations as true, and determine whether the allegations present plausible claims. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007). The pleading must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65. Although the complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level[.]" Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (citing Twombly, 127 S.Ct. at 1965). The court should first identify any conclusory allegations and bare assertions that are not entitled to an assumption of truth, then consider the factual allegations that are entitled to a presumption of truth and determine if they plausibly suggest entitlement to relief. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1951 (2009). The well-pleaded facts must permit an inference of more than a mere possibility of misconduct. Id. at 1950.

Motion for Summary Judgment

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment forthwith if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Edward, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has

affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48 (emphasis in original).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. Id.

ANALYSIS

In the motion before the court, defendant argues: (1) this case should be dismissed

because it is barred by res judicata; (2) this court should decline to exercise jurisdiction over this case under the doctrine of Colorado River abstention; and (3) this court should dismiss this case for failure to state a claim.

Res Judicata

Defendant first argues this case is barred by res judicata. Defendant argues the claims in this case arise out of the same facts and transactions as those asserted in the guaranty lawsuit. Defendant argues the guaranty lawsuit briefs show the similarities.

In the guaranty lawsuit, plaintiff guarantors (Gordon, Widmyer, Stefanutti, and Refco) asserted the following arguments based on the behavior of Urbahns:

- "Urbahns is, instead, trying to use this Court to perpetrate a fraud by retaining money and other assets that could be used to pay the debt of the entities in which he is the managing member and, instead, using an entity he owns [I-75 Partners] to force the guarantors to pay the debts while he retains the assets for his own use!"

- "Had Urbahns complied with his fiduciary and other duties and used corporate assets to pay these loans, Urbahns would not now be able to try to use this Court in an attempt to profit from the defaults he created."

- "[Urbahns] repeatedly attempted to evade...his obvious conflict of interest...Mr. Urbahns is one of the guarantors and he is also the managing member of the [sic] all of the principal obligors, and yet, now Mr. Urbahns is (through an entity he owns) pursuing the other guarantors for defaults under loans where he was the managing member of the entity that agreed to pay the loan in the first place."

- "Urbahns effectively caused the defaults as managing member of the principal obligors and is now trying to profit from the very defaults he caused."

- "Urbahns, as manager of the Borrowers, failed to use available assets to pay down the loans...Urbahns actions caused the default in the first place and, now Urbahns is wrongfully attempting to profit from his own wrongdoing by retaining the assets and trying to use this Court to force Defendants to pay the loans while Urbahns retains the assets and the property."

In the guaranty lawsuit appeal, plaintiff guarantors argue:

- "Urbahns is the [manager] of Dutton and is responsible for the day to day management and operations of Dutton...Urbahns had complete control over the operations of Dutton and the repayment of the loans."

- "In approximately October of 2009, as the manager of Dutton, Urbahns made the decision to stop using the brownsfield reimbursement funds that Dutton was receiving to make payments on the loans...Mr. Urbahns never even consulted his partners - who he is now suing - before he stopped making payments on the loans."

- "Urbahns simply elected to stop making payments on the loans from the brownsfield reimbursements and to create a default under the loans."

- "Urbahns waited until September 14, 2011 - after the evidentiary hearing had already closed - to disclose [tax information] to Appellants.  This was obviously because Urbahns knew that Appellee was attempting to improperly sue based on debt that had previously been forgiven."

Based on the above statements, defendant Urbahns asserts that plaintiff guarantors argued in the guaranty action that their liability on the loans was a direct result of the malfeasance of Urbahns in his running of DCC.  Defendant therefore argues plaintiff guarantors should have brought any claims based on such actions in the guaranty action.  Because they did not, defendant argues they are now barred from bringing such claims by res judicata.

Under Michigan law, "res judicata bars successive actions if (1) the prior action was decided on the merits; (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first."  McCoy v. State of Michigan, 369 Fed. Appx. 646, 649 (6th Cir. 2010).  "Michigan courts take a 'broad approach to the doctrine of res judicata', and the presence of these three elements 'bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not.'  This approach

has been labeled the 'transactional test.'" Id.

With respect to the first prong, the parties do not dispute that the guaranty lawsuit was decided on the merits. Judgment was entered by the Oakland County Circuit Court on May 2, 2012 after a dispositive motion which determined liability and a bench trial which determined damages.

On the second prong, defendant argues the actions involve the same parties or their privies. While BFO and BRG were not part of the guaranty lawsuit, apparently most or all of their members were parties to the guaranty lawsuit. Defendant therefore argues they were adequately represented by their "privies." Plaintiffs merely state that BFO and BRG were not parties to the guaranty lawsuit. Plaintiffs do not address defendant's argument regarding the members of the entities being parties to the guaranty lawsuit. Plaintiffs also argue that while they were parties to the lawsuit, they were defendants and therefore had different interests. Even if the second prong is met, plaintiffs argue the third prong cannot be met.

Third, defendant argues the claims should have been raised in the guaranty lawsuit. Defendant cites Washington v. Sinai Hospital, 478 Mich. 412, 420 (2007), in which the Michigan Supreme Court explained that "this Court uses a transactional test to determine if the matter could have been resolved in the first case...[which] provides that the assertion of different kinds of theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief." Defendant argues that because the claims in this case are predicated on the guaranty lawsuit judgment, and the allegations of wrongdoing that allegedly led to its entry, the claims in this case arise from the same group of operative facts as the claims in the guaranty lawsuit.

In this lawsuit, plaintiffs allege Urbahns caused the borrowing entities to fail to pay on the loans and to contractors, diverted DCC's Brownsfield Development reimbursements for his personal use, improperly acquired the Huntington loans through I-75 Partners and obtained a judgment on the guaranties, failed to provide 2011 tax information to plaintiffs, and generally engaged in self-dealing. Plaintiffs allege defendant took these actions himself, or through Dutton Investment or I-75 Partners. Two claims seek contribution as co-guarantors of the loans. Some of the claims are based on alleged breach of various duties owed by Dutton Investment to DCC. All of the claims seek $20 million in damages and therefore appear to be based on the judgment in the guaranty lawsuit. While it appears these claims arise out of the same transaction or occurrence as the guaranty lawsuit, the court need not decide that issue because it also appears plaintiffs could not have brought these claims in the guaranty action because of the timing of I-75's substitution.

In ToITest, Inc. v. North American Specialty Ins. Co., 362 Fed. Appx. 514, 517 (6th Cir. 2010), the Sixth Circuit "rejected an argument that only compulsory counter-claims apply to *res judicata*, finding that 'what is important is not whether a particular claim is compulsory, but whether the claim should have been considered during the prior action.'" In ProAssurance Corp. v. Nefcy, 2008 Mich. App. LEXIS 1203, *12-13 (June 10, 2008), the Michigan Court of Appeals applied the doctrine of res judicata to bar an action by an insurer against a doctor for indemnification. The court noted that the insured "obtained permission to file a third-party complaint against defendant" in the underlying medical malpractice suit but failed to do so. In our case, defendant notes that the trial judge in the guaranty action specifically pointed out that the plaintiffs had failed to seek leave to assert any third-party

claims against Urbahns. However, as plaintiffs note, I-75 did not substitute in for Huntington in the guaranty case until after discovery had closed and trial was scheduled, leaving little opportunity to file a counterclaim against defendant. Because of the timing of this substitution, even if the claims arise from the same transaction or occurrence, it appears unlikely plaintiffs could have brought the claims asserted here in the guaranty action. The court declines to apply res judicata to bar this action at this time but notes that this determination may change depending on the Michigan Court of Appeals decision or further factual development or amendment of claims in this case.

Abstention

Defendant also argues the abstention doctrine applies here. In Colorado River Water Conservation Dist. v. U.S., 424 U.S. 800, 818 (1976), the Supreme Court held that a federal court may abstain from exercising jurisdiction over a case where there is a parallel state proceeding. As discussed by this court in GMBB v. Travelers Indemnity, 100 F.Supp.2d 465, 473 (E.D. Mich. 2000), a parallel state proceeding requires more than just some overlap in issues with the federal proceeding and must be examined as it currently exists:

> The Sixth Circuit first stressed the importance of the presence of a parallel state proceeding in Crawley v. Hamilton County Comm'rs, 744 F.2d 28 (6th Cir.1984). In that case, the Sixth Circuit held that the district court improperly abstained from deciding plaintiffs' 42 U.S.C. § 1983 challenge to their conditions of confinement. Id. at 32. The district court had abstained under the Colorado River doctrine on the grounds that a parallel state court proceeding existed. Id. at 30. The Sixth Circuit disagreed and reversed the lower court explaining that although the state court proceeding was brought by the same prisoner-plaintiffs, it was filed against different defendants, over a different period of time, and did not involve the same issues of fact. Id. at 31. The Sixth Circuit also rejected defendants' argument that the state action could be modified to make it identical to the federal claim. Id. The court stressed that the issue is whether the state court proceeding "as it currently

> exists, is a parallel, state-court proceeding." Id. at 31 (emphasis in original). Finding that no parallel state court proceeding existed, the court determined that Colorado River abstention was inappropriate. Id. at 32.

In making the parallel proceeding determination, a court considers whether the theories of recovery are identical. See Romine v. Compuserve Corp., 160 F.3d 337, 339-40 (6th Cir. 1998).

Once a court decides there is parallel state court litigation, the court examines whether judicial economy warrants abstention. In doing so, the court considers:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; and (4) the order in which jurisdiction was obtained .... (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and, (8) the presence or absence of concurrent jurisdiction. These factors, however, do not comprise a mechanical checklist. Rather, they require "a careful balancing of the important factors as they apply in a give [n] case" depending on the particular facts at hand.

Id. "Our focus in these cases, once we have found that a parallel state proceeding exists, has been on the relative progress of the state and federal proceedings." Id.

Here, defendant argues the guaranty lawsuit constitutes a parallel state proceeding. Once I-75 Partners substituted in as the plaintiff in that case, issues arose that led to the claims asserted in this case. Defendant asserts that the pleadings and appellate briefs filed in the guaranty action show that it is a parallel proceeding to this one. In the guaranty case, the guarantor plaintiffs asserted that Urbahns had a conflict of interest and caused the loan defaults. However, those arguments are not central to the enforcement of the guaranties and the issues raised on appeal. Instead, they seem to have been offered to give the court context. While the guarantor plaintiffs also asserted that the tax documents

were withheld and that those documents show that $12,000,000 of the debt was forgiven, that assertion appears to be offered to dispute the amount owing on the loans rather than as a basis for a separate tort claim. In addition, while identity of parties is not necessary, the court finds it relevant that the defendant was not a party to the guaranty action and that defendant's LLC I-75 Partners did not substitute into the lawsuit until after liability was established. Because the scope of the guaranty action is limited to the enforcement of the guaranties, and this lawsuit is much broader and includes a number of tortious claims in addition to breach of contract, the guaranty action is not a "parallel proceeding" under the Colorado River abstention doctrine. Because there is no parallel state proceeding, the court need not determine whether judicial economy warrants abstention.

Failure to State a Claim

### Counts I (Breach of Fiduciary Duty), III (Violation of MCL 450.4404), and IV (Violation of MCL 450.4515)

Counts I, III, and IV are all based on the obligations of Dutton Investment as manager of DCC. Count I alleges Dutton Investment's breach of fiduciary duty for alleged mismanagement of DCC. Count III alleges Dutton Investment, as manager of DCC, had an obligation pursuant to MCL 450.4404 to discharge its duties in good faith and in the best interests of DCC. Count IV alleges Dutton Investment, as manager of DCC, had an obligation to DCC and its members to refrain from engaging in illegal, fraudulent, or willfully unfair and oppressive conduct. Because these claims are all based on duties owed by Dutton Investment, rather than Urbahns, Urbahns argues plaintiffs fail to state a claim against him.

Plaintiffs argue that corporate officers are personally liable for their own tortious acts

committed on behalf of a corporation. See Allen v. Morris Bldg. Co., 360 Mich. 214, 218 (1960) (finding individual defendant liable for tort along with corporate defendant because "he was the majority stockholder, president, and in control of defendant corporation's activities, and . . . participated in the tort.") In Dept. of Agriculture v. Appletree Marketing, L.L.C., 485 Mich. 1, 19 (2010), the Michigan Supreme Court found that "if the facts prove either common law or statutory conversion, [defendant] can be held personally liable and may not hide behind the corporate form in order to prevent liability for his active participation in the tort." However, in that case, "the alleged wrongful conduct was actionable at common law and is distinct from the wrongful conduct" prohibited by the statute regulating corporate activity. The conversion claim did not arise under the statute nor rely on the statute to create a duty. In contrast, in this case, plaintiffs rely on the duties owed by Dutton Investment under both statutory and common law. The duty is not owed by Urbahns under the law. Because plaintiffs have not set forth an independent duty owed by Urbahns, unlike the defendant in Appletree, plaintiffs fail to state a claim in counts I, III, and IV.

### Counts II (Contribution) and VI (Breach of Contract)

In counts II and VI of the first amended complaint, plaintiffs allege that defendant was a co-guarantor of the Huntington debt. In count II, plaintiffs allege that pursuant to Section 7 of the Contribution Agreement and the laws of the state of Michigan, defendant is liable under his guaranty to the same extent as the plaintiff guarantors. They assert a common law contribution claim. In count VI of the first amended complaint, plaintiffs allege Urbahns was required to reimburse plaintiffs for his proportionate share of the $20,508,941.32 judgment entered in the guaranty lawsuit pursuant to Section 7 of the

Contribution Agreement and failed to do so. They therefore assert a breach of contract claim.

Section 7 of the Contribution Agreement provides:

In the event Lender makes demand under the terms of any individual guaranty executed in connection with the Loan, all other guarantors of the Loan shall make immediate restitution to such guarantor of their respective proportionate share of the amount **paid to Lender**.

(Emphasis added). "The right to contribution is the right of a person who has discharged a common liability or burden to recover of another, who is also liable, the portion he or she ought to pay or bear." 18 Am. Jur. 2d Contribution § 1. Thus,"[i]t has been frequently stated that no right to contribution in favor of a joint debtor exists until actual payment of more than the share of the whole debt which that debtor ought to pay." 12 Williston on Contracts § 36:16 (4th ed.)

In Hollingsworth Logistics Group v. Equipment Leasing Services, No. 10-11011, 2010 WL 4386975, *4 (E.D. Mich. Oct. 29, 2010), the court evaluated a contribution claim under Michigan law and required: 1) a common debt; and 2) payment on the claim. The court noted a Michigan Supreme Court decision which states:

When two or more persons are jointly liable for the payment of the same debt or obligation and one has paid the entire claim, he may have contribution from his co-debtors or obligees in cases where it would be equitable and just.

Id., citing Comstock v. Potter, 191 Mich. 629, 638 (1916).

Defendant argues plaintiffs' claims for contribution and breach of contract fail because plaintiffs have not alleged that they have paid on the judgment. Plaintiffs argue payment is not necessary but fail to cite any authority for their position. Section 7 of the Contribution Agreement references "the amount paid to Lender" as a basis for a

contribution claim. Because plaintiffs have not alleged payment or other discharge of the joint obligation in excess of their own share of it, plaintiffs fail to set forth a plausible contribution or breach of contract claim.

### Count VII (Piercing the Corporate Veil)

In count VII of the first amended complaint, plaintiffs allege that Dutton Investment is a mere instrumentality of Urbahns, used "regularly and consistently" to allow Urbahns to engage in tortious conduct against his partners with impunity. Plaintiffs allege only "a small fraction" of this conduct is set forth in the first amended complaint. Plaintiffs allege that the improper use of Dutton Investment resulted in the $20 million judgment against plaintiffs. Plaintiffs therefore seek a judgment piercing the corporate veil of Dutton Investments and holding defendant personally liable.

Defendant argues plaintiffs fail to state a claim for piercing the corporate veil. In Florence Cement Co. v. Vettraino, 292 Mich. App. 461, 469 (2011), the Michigan Court of Appeals found "in order for a court to order a corporate veil to be pierced, the corporate entity (1) must be a mere instrumentality of another individual or entity, (2) must have been used to commit a wrong or fraud, and (3) there must have been an unjust injury or loss to the plaintiff." Defendant argues plaintiffs' conclusory allegation that Urbahns used Dutton Investment as a "mere instrumentality" is not sufficient to pierce the corporate veil. "It is well established that piercing the corporate veil is not itself a cause of action." Brennan v. National Action Financial Services, Inc., 2012 WL 3888218, *3 (E.D. Mich. Sep. 7, 2012) (summarizing case law finding piercing the corporate veil is a remedy, not a cause of action). Because piercing the corporate veil is not an independent cause of action, plaintiffs fail to state a claim in count VII. The court also questions whether plaintiffs sufficiently set

forth the factual basis for their allegation that defendant used Dutton Investment as a "mere instrumentality." The court is willing to entertain a motion for leave to amend this claim within a reasonable time.

CONCLUSION

For the reasons set forth above, defendant's motion to dismiss or for summary judgment is GRANTED in part and DENIED in part. Defendant's requests to dismiss based on res judicata and abstention are denied. Counts I, II, III, IV, VI, and VII are dismissed for failure to state a claim. Count V remains.

Dated: April 17, 2013

                                        s/George Caram Steeh
                                        GEORGE CARAM STEEH
                                        UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 17, 2013, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---